JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRN SERVICES INC., <br><br> Plaintiff, <br><br> v. <br><br> XL SPECIALTY INSURANCE COMPANY; et al., <br><br> Defendants. | CASE NO. CV 18-1085-R <br><br> ORDER GRANTING DEFENDANT GALLAGHER BASSETT SERVICES INC'S MOTION FOR SUMMARY JUDGMENT |

Before the Court is Defendant Gallagher Bassett Services Inc.'s ("GB") Motion for Summary Judgment, filed on November 5, 2018. (Dkt. No. 47). Having been thoroughly briefed by the parties, this Court took the matter under submission on December 10, 2018.

Plaintiff HRN Services Inc. ("Plaintiff" or "HRN") initiated this action against GB on January 2, 2018 for breach of contract and intentional interference with business relations. The case was removed on the basis of diversity jurisdiction from the Los Angeles County Superior Court on February 8, 2018. On or about January 1, 2011, Plaintiff and GB entered into a Third Party Administrator Agreement (the "TPA Agreement") providing for the administration and handling of worker's compensation claims under an Insurance Program Agreement between Plaintiff and Defendant XL Specialty Insurance Company ("XL"). The TPA Agreement

1  terminated in early 2012, and the relationship between Plaintiff and GB continued under an oral
2  contract from March 2012 to the present.  Plaintiff alleges that the oral contract required GB "to
3  competently perform and bill for third party administration of HRN's workers' compensation
4  insurance program, only pay appropriate bills, and accurately account for HRN's funds and
5  billings."  Plaintiff further alleges that GB breached the oral contract by improperly increasing
6  Plaintiff's imprest fund, charging for inappropriate and excessive fees, misallocating HRN's
7  funds, failing to properly review and handle claims, failing to provide accurate or timely
8  accountings, making secret and inaccurate reportings to XL, making improper and excessive
9  payments on claims, and failing to pay funds to settle GB's inappropriate actions relating to a
10 claim by Brandy Deasy.

**Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  To meet its burden of proof on a motion for summary judgment, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587.

///

///

**Breach of Contract; Statute of Limitations**

"When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). California courts utilize the "governmental interests" analysis to make this determination. *Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992) (citing *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir. 1986), cert. denied, 484 U.S. 963 (1987)). It is presumed that California law applies unless the proponent of foreign law can show otherwise. *Id.* (citing *Browne v. McDonnell Douglas Corp.*, 504 F. Supp. 514, 517 (N.D. Cal. 1980); *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 731 (1972)). The burden of proving that a foreign jurisdiction's law applies is therefore on the party seeking to apply foreign law. *Id.* (citing *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989)).

First, the Court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it. *Id.* Here, GB asserts that California Code of Civil Procedure Section 339 applies. Section 339 imposes a two-year statute of limitations on "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing." Plaintiff does not dispute that its claims would be barred by the two-year statute of limitations in California, assuming California law applies. However, Plaintiff contends that the Court must apply the five-year statute of limitations for such actions imposed by Illinois law because the TPA Agreement provides for the application of Illinois substantive law to that agreement.

Because California and Illinois law differs, the Court must determine what interests, if any, the competing jurisdictions have in the application of their respective laws and then balance those competing interests. *See Id.* (citing *Hurtado v. Superior Court*, 522 P.2d 666, 670 (Cal. 1974)). Here, both California and Illinois have an interest in protecting its citizens and in providing for the efficient and orderly administration of justice. It is undisputed that HRN is a California corporation, that the alleged oral contract was entered into in California, and that GB performed services for HRN in California. Whatever interest the state of Illinois may have in applying its law to this case, it is clearly outweighed by the interests of California under these facts. Accordingly, California law must apply in the absence of an agreement to adopt the law of a

1   foreign jurisdiction.

2   With respect to the terms of the oral agreement, Paragraph 6 of the Complaint against GB states only that "[t]he Contract required GB to competently perform and bill for third party administration of HRN's workers' compensation insurance program, only pay appropriate bills, and accurately account for HRN's funds and billings." Although the TPA Agreement states that "[t]his agreement shall be governed by the laws of the State of Illinois without regard to conflict of law rules," Plaintiff does not contend that GB breached the TPA Agreement. Plaintiff has not alleged that the terms of the written TPA Agreement were included in the parties' subsequent oral agreement, nor has Plaintiff provided proof supporting such an interpretation. In fact, Plaintiff admitted that "HRN does not believe the oral agreement contained the same terms as the TPA Agreement, other than to continue to process the claims as needed," and that "HRN does not believe the oral agreement was modified and did not agree to any modification." Because the evidence indicates that the parties did not mutually assent to the application of Illinois law (or the law of any other state) to their oral agreement, California's two-year statute of limitations must be applied.

For the purposes of the statute of limitations, "[a] cause of action accrues when the claim is complete with all of its elements. Although this ordinarily occurs on the date of the plaintiff's injury, accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements. Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (internal citation omitted). "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1111 (1988). Here, it is undisputed that "[o]n November 4, 2014, Plaintiff's counsel, Jon Leader, sent a letter to GB addressing the claims that form the basis of Plaintiff's Complaint, stating, inter alia, that 'HRN strongly disputes the positions taken by GB and believes they are a breach of contract, in addition to other potential claims.'" Moreover, Plaintiff's

1  principal and Rule 30(b)(6) representative, Arthur Flaster testified that Plaintiff had "suspicions"
2  of alleged wrongdoing by December 1, 2013.  It cannot reasonably be disputed, therefore, that
3  Plaintiff was aware of, or at least had reason to know of, its potential claims against GB no later
4  than November 4, 2014 if not sooner, and the statute of limitations began to run no later than that
5  date.
6     Plaintiff's claim that GB is barred from asserting the statute of limitations as a defense
7  under the doctrine of equitable estoppel is unavailing.  "The doctrine of equitable estoppel is based
8  on the theory that a party who by his declarations or conduct misleads another to his prejudice
9  should be estopped from obtaining the benefits of his misconduct.  Under appropriate
10 circumstances, equitable estoppel will preclude a defendant from pleading the bar of the statute of
11 limitations where the plaintiff was induced to refrain from bringing a timely action by the fraud,
12 misrepresentation or the deceptions of defendant." *Ateeq v. Najor*, 15 Cal. App. 4th 1351, 1356
13 (1993) (quoting *Kleinecke v. Montecito Water Dist.*, 147 Cal. App. 3d 240, 245 (1983)).
14 California courts have recognized that equitable estoppel is appropriate "where delay in
15 commencing an action is induced by the conduct of the defendant." *Id.* at 1537.  In *Ateeq*, for
16 example, the court applied the doctrine of equitable estoppel based on evidence of duress.  *Id.*
17 "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause
18 his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to
19 plead the very delay caused by his course of conduct as a defense to the action when brought."
20 *Lantzy v. Centex*, 31 Cal. 4th 363, 383 (2003).  Here, GB neither induced Plaintiff to refrain from
21 initiating this suit nor lulled Plaintiff into a false sense of security prior to the statute of limitations
22 expiring.  In fact, Flaster has claimed that GB's response to Plaintiff's suspicions of wrongdoing
23 was "sue us."
24    Plaintiff also asserts that it could not have initiated suit within the statute of limitations
25 period because GB had not provided all of the information requested by Plaintiff up to that point.
26 However, Plaintiff does not even attempt to explain why that information could not be obtained
27 through discovery aimed at supporting its allegations of alleged wrongdoing, of which it had
28 become aware no later than November 2014.  Plaintiff simply has presented no basis for applying

the doctrine of equitable estoppel, and the facts presented to the Court weigh clearly against it. Accordingly, Plaintiff's cause of action for breach of contract is barred by the two-year statute of limitations.

**Intentional Interference with Business/Contractual Relations**

Plaintiff's second cause of action for intentional interference with business relations also fails as a matter of law. Plaintiff contends that GB interfered with its contractual and business relationship with Defendant XL. Under California law, "the elements of the tort of intentional interference with contractual relations are: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990)). GB's assertion that this cause of action can succeed only against a complete "stranger" to the contract is not directly supported by *Fresno Motors*, which did not rely on that "elusive concept" to support its holding. *See id.* at 1125-27. However, the viability of that concept is unnecessary for resolution of this case as well since Plaintiff has provided no evidence to support a finding that GB acted in any way "designed to induce a breach or disruption of the contractual relationship." Plaintiff cannot rely merely on allegations contained in its pleadings. Accordingly, there is no genuine dispute of material fact as to this issue, and GB is entitled to judgment as a matter of law on Plaintiff's second cause of action for intentional interference with business relations.

**2013 Asset Purchase Agreement**

On December 9, 2013, Plaintiff sold its assets and enumerated liabilities under an Asset Purchase Agreement ("APA") to Accountable Healthcare Staffing, Inc. ("AHS"). As discussed in detail above, any cause of action arising on or prior to that date is necessarily barred by the two-year statute of limitations under California Code of Civil Procedure Section 339. Even if that were not the case, all potential claims held by Plaintiff against GB were assigned to AHS based on the plain language of the APA. Specifically, Paragraph 2 of the APA states: "Seller [HRN] agrees

to sell, assign, transfer and deliver to Buyer [AHS]…and Buyer agrees to purchase and accept from Seller…the following assets…" Paragraph 2, Subsection (h), under the subheading "Claims," provides that the assigned assets include "[a]ll of Seller's rights to any choses in action, claims, causes or rights of action arising in connection with the Business…except those listed in Schedule 2(h)." None of Plaintiff's potential causes of action against GB are listed in Schedule 2(h), and Plaintiff does not attempt to argue otherwise. Instead, Plaintiff contends that the claims were excluded from the APA by Schedule 2(g), which lists "[i]nsurance pre-payments and over-payments, and insurance related Letters of Credit…" This assertion is not supported by the language of the APA or by any other evidence, and Plaintiff has not even attempted to explain why its claims against GB should be included within Schedule 2(g) rather than 2(h), which specifically lists "Claims" excluded from the APA. Accordingly, there is no genuine dispute of material fact as to this issue, and GB is entitled to judgment as a matter of law on both causes of action.

**IT IS HEREBY ORDERED** that Defendant Gallagher Bassett Services Inc.'s Motion for Summary Judgment is GRANTED. (Dkt. No. 47).

Dated: January 7, 2019.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE